POSTED ON WEBSITE
NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | | |
|---|---|---|
| In re | ) | Case No. 24-11015-B-11 |
| **PINNACLE FOODS OF CALIFORNIA LLC,** | ) ) | Docket Control No. MB-4, VP-2 |
| Debtor. | ) ) | |
| In re | ) | Case No. 24-11016-B-11 |
| **TYCO GROUP, LLC,** | ) ) | Docket Control No. MB-4, VP-2 |
| Debtor. | ) ) | |
| In re | ) | Case No. 24-11017-B-11 |
| **CALIFORNIA QSR MANAGEMENT, INC.,** | ) | Docket Control No. MB-4, VP-2 |
| Debtor. | ) ) ) | Date:  March 25, 2025 Time:  9:30 a.m. Place: 2500 Tulare St. Dept. B, Fifth Floor Courtroom 13 |

**MEMORANDUM RULING ON FLAGSTAR FINANCIAL & LEASING, LLC'S AND POPEYES LOUISANA KITCHEN, INC.'S MOTIONS TO REMOVE DEBTORS FROM POSSESSION AND EXPAND POWERS OF SUB V TRUSTEE**

————————————————

Glenn D. Moses, Venable LLP, for Popeyes Louisiana Kitchen, Inc., Hagop T. Bedoyan, Garrett R. Leatham, Garrett J. Wade, McCormick, Barstow Sheppard, Wayte & Carruth, for Popeyes Louisiana Kitchen, Kevin J. Etzel, Vedder Price, P.C. for Flagstar Financial & Leasing LLC, Movants.

Michael J. Berger, Law Offices of Michael J. Berger, for Pinnacle Foods of California, LLC, Tyco Group, LLC, CA QSR Management, Inc., Debtors/Respondents.

Walter R. Dahl, Subchapter V Trustee.

————————————————

RENÉ LASTRETO II, Bankruptcy Judge:

**INTRODUCTION**

While wandering Wonderland, Alice reached a fork in the road. She encountered the Cheshire Cat in a tree who gave her two suggestions: Go one way and reach the March Hare; go the other way and reach the Hatter. The only problem, the Cheshire Cat said they both were mad. Alice was left with two unappealing choices.[1]

These three chapter 11 subchapter V cases have reached a fork in the road. Unlike Alice, the court has three tines in this fork: Expand the subchapter V trustee's powers, dismiss the cases, or convert them to chapter 7. After considering the development of these cases, determining cause exists to follow one of the forks, and considering the interest of the creditors and the estates, the court chooses the fork that results in conversion of these cases to chapter 7.

**BACKGROUND**

**I.**

Pinnacle Foods of California, LLC ("Pinnacle"), Tyco Group, LLC ("Tyco") and California QSR Management, Inc. ("QSR") each filed Chapter 11 bankruptcy proceedings in April 2024 and elected to proceed under Sub Chapter V. Pinnacle and Tyco are franchisees of Popeye's Louisiana Kitchens ("PLK"). QSR is the operating entity for both.

Flagstar Financial & Leasing, LLC ("Flagstar") is the primary secured creditor. Flagstar is owed approximately 3.1 million dollars secured by all three Debtors' personal property

---

[1] She chose to seek out the March Hare partly because, Alice reasoned, he was less likely to be as mad. Any choice was dubious since the Cheshire Cat said it was mad too. Carroll, Lewis. Alice's Adventures in Wonderland, Chapter 6.

assets including inventory, equipment, leases, accounts, goods, and general intangibles.  There is no dispute as to the extent or validity of Flagstar's interest.

PLK is owed approximately $1.3 million from Pinnacle and $221,000.00 from Tyco for unpaid franchise and advertising fees.

From the beginning of these cases, PLK has maintained that it would not consent to either Pinnacle or Tyco assuming their franchise agreements under 11 U.S.C. § 365(c).[2]  Pinnacle operates six PLK fast food restaurants – five in Fresno, California and one in Turlock, California.  Tyco operates one PLK restaurant in San Diego, California.  Pinnacle, Tyco and PLK entered into separate franchise agreements for each restaurant.

These cases have been fraught with polarized legal positions from the onset.  The Subchapter V Trustee, Walter Dahl, has endeavored to close the gap between the factions without success.

Four months after the cases were filed, PLK filed its first motion to remove the Debtors-in-possession and expand the powers of the Subchapter V Trustee.  Flagstar joined in the motion. Debtors opposed.  The court denied the motions because the cases were relatively new and no party had formally brought the issue of the ability of Pinnacle and Tyco to assume the franchise agreements before the court.  PLK (and by joinder Flagstar), initially argued that controlling Ninth Circuit law clearly precluded Pinnacle and Tyco's assumption of the franchise agreements under *Perlman v. Catapult Entertainment, Inc. (In Re Entertainment, Inc.)* 165 F.3d 747 (9th Cir.g13 1999).  Because of Ninth Circuit Law, PLK and Flagstar argued that it was gross

---

[2] All references to "Section" shall be to the Bankruptcy Code (11 U.S.C. § 101 et seq.) unless otherwise indicated.

mismanagement on the part of the Debtors to prosecute these cases since without PLK's consent, the Debtors could not reorganize. The court nevertheless denied the motion finding that, among other things, the Debtors asserting a contrary legal position did not evidence gross mismanagement.

Then, in September 2024 Pinnacle filed a motion to assume the franchise agreements under § 365.  In October 2024, following briefing and oral argument, the court denied Pinnacle's motion based in part on *Catapult*, the Lanham Trademark Act (Title 15 Ch. 22 U.S. Code) and relevant provisions the California Franchise Relations Act (Cal. Bus. & Prof. Code § 20000 et seq.).

Fourteen days later, Pinnacle filed a motion to reconsider which the court denied in December 2024.  Pinnacle appealed both orders.  The appeal is pending.

After receiving an extension of time to file a plan, the Debtors filed three plans which would require assumption of the franchise agreements in order to implement the reorganization. These plans went nowhere.  Then in early 2025, the Debtors filed other plans that required assumption of the franchise agreements PLK again said it would not consent.

As these efforts proceeded, the Debtors sought and obtained an extension of time when the leases for their franchise locations had to be assumed.  Pinnacle also obtained lessor consents for short extensions beyond the 210 days permitted under § 365(d)(4).  Those extensions expired February 14, 2025.  There have been no further extensions ordered by the court.  Pinnacle claims that two landlords have agreed to subsequent extensions. But a majority of the landlords have not agreed.

Pinnacle did file a motion to assume the leases. However, the motion was opposed by the Subchapter V Trustee who argued, correctly, that given the administrative burden that a default would be on Pinnacle's estate, and the uncertainty of the reorganization, it was not an appropriate exercise of business judgment to assume the leases. The court agreed and denied the motions.

Based on the Debtors' monthly operating reports for the last five months there is a total loss of over $48,000.00.[3] Pinnacle's most recent Monthly Operating Report shows only $22,000.00 of cash on hand and a negative cash flow of $58,000.00. (Doc. #502).

California QSR's most recent monthly operating report shows a negative net profit of $45,327.00. (QSR Doc. #321). Tyco is inactive since the store was closed.

At the end of January 2025, PLK and Flagstar filed these motions. A week later, on February 4, 2025, the court held a hearing on other matters in all three cases. At that hearing, the court noted that modified plans had been filed by the Debtors but those plans still depended upon the assumption of the franchise agreements to implement them. The court also acknowledged the filing of these motions by PLK and Flagstar. The court continued the hearings on the motions to March 25, 2025, to give all parties the opportunity to oppose the motions. But for reasons indicated on the record, the court also noted that the court was going to treat the hearing on March 25 as also encompassing the options of either dismissal or conversion of all

---

[3] That number includes a projected loss for January 2025 of $3,889.00. (Doc. #401). According to the January 2025 monthly operating report, net cash flow for Pinnacle during the month was negative $9,123.44. (Doc. #452)

three cases.  The court was clear that any new plan to be filed by March 5, 2025, must put these cases on a different trajectory. (Pinnacle Doc. #481).

The Debtors did file second modified plans on March 5, 2025. But the Pinnacle plan depends again upon assumption of the franchise agreements for its implementation.  The plan does provide that if the appellate process results in Pinnacle being unable to assume the franchise agreements, the franchises will be liquidated.  Notwithstanding the court's admonishments, no significant change in trajectory occurred.

## II.

In its motion, PLK contends there is cause to remove the debtors-in-possession because the Debtors are conflicted.  PLK contends that Pinnacle's efforts to continue to litigate its ability to assume the franchise agreements is now contrary to the best interests of the creditors and the estate. Pinnacle not only filed a motion to assume the franchise agreements which was denied but filed and prosecuted a motion for the court to reconsider its order which, PLK argues, demonstrates the debtor prioritizing its own self-interest as opposed to what is best for the creditors or the estates.  Since the Ninth Circuit has settled the issue for now, prosecution of the appeal and further litigation is not in the estate's best interest.  PLK also argues that the financial position of Pinnacle and QSR is precarious. As further evidence of mismanagement, PLK stresses that the failure of the Debtors to preserve the rights to assume the commercial leases.

1  Flagstar essentially argues the same.  Flagstar contends
2  that it is gross mismanagement of the estate by the Debtor
3  relentlessly pursuing a reorganization involving assumption of
4  the franchise agreements and relying upon the landlord's consent
5  to allow the Debtors to continue to occupy the restaurant space.

6  Both PLK and Flagstar urge the court to remove the debtors-
7  in-possession and expand the Subchapter V Trustee's powers to
8  those included in § 1183(b)(2) and (5).  In addition, Flagstar
9  and PLK want the Subchapter V Trustee's duties to be expanded to
10  include authority to sell the franchises as a going concern.
11  Flagstar contends that converting the cases will result in a
12  lower collateral value leaving Flagstar exposed to a large
13  unsecured claim.[4]

14  In contrast, the Debtors argue that neither Flagstar nor PLK
15  have provided adequate evidence to establish the necessity for
16  the debtors-in-possession to be removed for fraud, incompetence,
17  or gross mismanagement of the affairs of the Debtors.  The
18  Debtors note that Pinnacle has pursued an appeal of the denial of
19  the motion to assume the franchise agreements and the denial of
20  the motion for reconsideration.  The Debtors have also filed a
21  Second Amended Chapter 11 Small Business Plan.  The Debtors have
22  stipulated to extend two leases for two Fresno locations on
23  McKinley and Cedar Avenues.  As to the other leases, Pinnacle has
24  filed a motion to assume.  The Debtors claim that all Flagstar
25  and PLK really want is to sell the business when the Debtors want
26  to preserve the business' value.
27  ///

[4] Flagstar has been receiving monthly payments under the court approved cash collateral budget.

7

As an alternative position, the Debtors argue that if the court rules that the Subchapter V Trustee's duties should be expanded, those duties should not include control of the pending appeal and a litigation involving Pinnacle and PLK pending in Florida. The Debtors contend that both litigations could result in a larger payout for unsecured creditors.

Flagstar's reply emphasizes that the Debtors continued accumulation of administrative expenses as a result of the litigation strategy amounts to gross mismanagement. Flagstar also notes that the recent closure by Pinnacle of the McKinley Avenue location is evidence that the Debtor is struggling.

In addition, Flagstar urges that the Second Modified Plan filed by the Debtors on March 7, 2025, is a "placeholder plan" which was contrary to what the court required as stated on the record at the February 4, 2025, hearing. The Second Modified Plan still requires the assumption of the franchise agreements. Only if the Debtors cannot assume the franchise agreements would they agree to liquidate. Accordingly, Flagstar contends, the Debtors have placed their own self-serving interests or those of their principal, Mr. Damani, ahead of the interests of the creditors and the estate.

PLK also replied asserting that the Debtors should be removed as debtors-in-possession or alternatively the cases should be converted to Chapter 7. PLK points to several recent developments supporting removal of the debtors-in-possession. They include the closure of two restaurants.[5]

///

---

[5] The McKinley Avenue location in Fresno, a Pinnacle franchise is closed and the San Diego restaurant is closed which is the only location for the Tyco franchise.

In addition, PLK lists the estates now teetering on administrative insolvency; the proposed Second Modified Plan is unconfirmable and ignored the court's directives; Pinnacle allegedly disregarded a $3.25 million dollar offer for four restaurants without a response. (Doc. #481).

PLK also raises the Debtors' effort to seek a stay of the bankruptcy proceedings pending appeal from the District Court even though Fed. R. Bankr. Proc. 8007 requires that such requests come before this court initially. Finally, PLK contends that in the Second Modified Plan, Pinnacle wrongfully disclosed settlement communications between PLK, Flagstar, the Debtors and the Subchapter V Trustee.

PLK also contends that "cause" for removal of the debtors-in-possession or dismissal or conversion has been established. It notes that there is no feasible path forward for these debtors without a liquidation of the franchises. Further, the Debtors have failed to preserve assets because they have not had all leases extended under § 365. These facts demonstrate gross mismanagement, says PLK as well as failure of the Debtors to follow this court's directives.

At oral argument on these motions on March 25, 2025, PLK and Mr. Dahl, the Subchapter V Trustee, urged the court to convert the cases to chapter 7. Flagstar did not oppose conversion.

### JURISDICTION

This is a civil proceeding arising under Title 11 of the United States Code. The District Court has jurisdiction under 28 U.S.C. § 1334(b). The District Court referred this matter to

this court under 28 U.S.C. § 157(a).  This is a proceeding that
the Bankruptcy Court may hear and finally determine under 28
U.S.C. § 157(b)(2)(A).

**DISCUSSION**

**I.**

In a subchapter V chapter 11 case, the court *shall* order
that the debtor not be a debtor-in-possession for "cause":

> Including fraud, dishonesty, incompetence, or
> gross mismanagement of the affairs of the
> debtor, either before or after the date of
> commencement of the case, or for failure to
> perform the obligations of the debtor under a
> plan confirmed under [subchapter V].  § 1185(a)

Notably, once "cause" is found, the court "shall" remove the
debtor-in-possession.  Also, the word "including" in § 1185(a) is
not limiting. § 102(3).  Whether to remove a debtor-in-
possession, dismiss, or convert a case is determined by the best
interest of creditors and the estate.  *In Re Pittner*, 638 B.R.
255, 260 (Bankr. D. Mass. 2022)(Removal of debtor from possession
under § 1185(a) resulting in increasing powers of the trustee
under § 1183(b)(5)).

Section 1112 is part of subchapter V of chapter 11 of the
Bankruptcy Code.  § 1181(a).  The process for converting or
dismissing a case under chapter 11 involves a few steps.

First, conversion of a case to chapter 7 or dismissal
"shall" be ordered "whichever is in the best interest of
creditors and the estate for cause." § 1112(b)(1).  Subdivision
(b)(4) lists sixteen alternatives that would be "cause" to
convert or dismiss.  However, as with "cause" to remove a debtor-

in-possession under subchapter V, the alternatives are not limiting. The court is free to consider other factors. *In Re JJ Arch LLC*, 663 B.R. 258, 275 (Bankr. S.D.N.Y. 2024). Once cause for relief is shown, the Bankruptcy Court has broad discretion to either convert or dismiss the chapter 11 case. *In Re Ghatanfard*, 666 B.R. 14, 23 (S.D.N.Y. 2024).

Second, once the movant establishes that "cause" exists, the burden shifts to the respondent to demonstrate by evidence the unusual circumstances that establish that dismissal or conversion is not in the best interests of creditors and the estate. § 1112(b)(2); *In Re JJ Arch LLC*, 663 B.R. at 275.

Third, the debtor or any other party in interest must establish that there is a reasonable likelihood that a plan will be confirmed within a reasonable period of time; and the grounds for converting or dismissing the case include an act or omission of the debtor (other than substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation) and there exists a reasonable justification for the act or omission, and that the act or omission will be cured within a reasonable period of time fixed by the court. § 1112(b)(2)(A) and (B).

The Bankruptcy Court has broad discretion to determine whether unusual circumstances exist and whether conversion or dismissal is in the best interest of creditors and the estate. *In Re Ghatanfard*, 666 B.R. at 25 quoting *Andover Covered Bridge, LLC*, 553 B.R. 162, 172 (B.A.P. 1st Circuit 2016). "The code does not define unusual circumstances; however, courts have determined that it contemplates conditions that are not common in most

chapter 11 cases." *In Re Van Eck*, 425 B.R. 54, 63 (Bankr. D. Conn. 2010). "Such conditions must not only be unusual, they must also demonstrate that dismissal or conversion is not in the best interest of creditors and the estate." *Id.*

Applying both the specific provisions in subchapter V for the removal of the debtor-in-possession, § 1185(a), and the provisions for conversion and dismissal of a chapter 11 case generally, § 1112, there is cause for either form of relief.

**II.**

There is cause to either remove the debtors-in-possession, convert these cases to chapter 7 or dismiss the cases.

First, since September 2024 there has been inconsistent and primarily negative cash flows based upon the monthly operating reports for these entities. There is some suggestion that these entities have operated at a profit. However, it does not appear that there is administrative solvency that would warrant continuation of the status quo. Given the cash positions of the two remaining operating entities, there is insufficient cash to continue.

Second, the Debtors, primarily Pinnacle, have continued to litigate the issue of assumption of the franchise agreements with the objective of reversal of settled Ninth Circuit law. The court has denied Pinnacle's motion to assume the franchises and denied the motion to reconsider. The Debtors continue to pursue the litigation by filing both an appeal and a motion for stay pending appeal.

///

Though it may be true that the Debtors or their principal want to pursue the rights they have available, that cannot be done without consideration of the creditors' and the estates' interests.  That suggests a conflict of interest which is a cause for removal.  *In Duling Sons, Inc.*, 650 B.R. 578, 581 (Bankr. S.D. 2023).  ("Notwithstanding the presence of experienced professionals and extensive legal work in the case, the debtor-in-possession has made scant progress in securing support of creditors for a plan of reorganization").

Third, Pinnacle has allowed a majority of commercial leases for the franchise locations to be deemed rejected under § 365(d)(4) leaving future operations tenuous.  Pinnacle has reported to the court that two landlords have agreed to continued extensions.  But the majority have not.[6]

Fourth, the Debtors have continued to propose plans and modified plans that cannot be confirmed and are contrary to what the court has directed.  The plans cannot be confirmed for several reasons not the least of which is that the court has determined that the franchise agreements cannot be assumed without PLK's consent.  That is consistent with Ninth Circuit authority.  Even the Second Modified Plan filed on March 7, 2025, contains a liquidation option but only after it is determined the franchise agreements cannot be assumed.  That is unrealistic.

Fifth, the cases are teetering on administrative insolvency. Maintenance of the status quo results in accrual of attorneys' fees and professional fees with no feasible means of paying those fees at plan confirmation without a major capital infusion which

---

[6] One of the landlords who has agreed is the landlord for the McKinley Avenue location in Fresno which has been closed.

13

has not been proposed to date. That is also a basis for cause to convert or dismiss. *Hassen Imports Partnership v. City of West Covina (In Re Hassen Imports Partnership)*, CC-13-1019 KiPaD, 2013 Bankr. LEXIS 3870*38 (B.A.P. 9th Cir. August 19, 2013).

Any of these factors would be sufficient "cause" to either remove the debtors-in-possession, convert the cases to chapter 7 or dismiss the cases.

**III.**

**A.**

The Debtors have provided and established no unusual circumstance that converting or dismissing the case is not in the best interest of creditors and the estate.

Debtors claim that there is no evidence of fraud, incompetence, dishonesty, or gross mismanagement. But as discussed above, those "causes" are not limiting. Conflicts between the interests of the debtors-in-possession and the creditors in the estate are also causes. See, *Ghatanfard*, *Pittner*, and *In Re Sillerman*, 605 B.R. 631, 642 (Bankr. S.D.N.Y. 2019). (Listing conflicts of interest as an example of non-enumerated misconduct found to constitute cause).

The Debtors also argue that it is pursuing an appeal on the assumption litigation and pursuing the Florida litigation could result in additional returns to unsecured creditors. However, "mere hope of prevailing on potential litigation claims is not a sufficient basis to defeat a showing of cause to convert." *In Re BH S&B Holdings, LLC*, 439 B.R. 342, 350 (Bankr. S.D.N.Y. 2010). ///

In an effort to make pursuit of litigation in this case an "unusual circumstance," the Debtors assert that its' principal, Mr. Damani, is going to pay for all appellate costs in pursuing the appeal on the assumption issue and paying for the Florida litigation. However, that does not solve the conflict issue. Litigation will still involve significant delay. Even the proposed Second Modified Plan has a small distribution to unsecured creditors (3%). So, the Debtors principal proposes that all other interests simply be placed on "pause" while litigation proceeds. That is an unsatisfactory result.

Maintenance of the uncertain status of the reorganization is simply contrary to one of the primary purposes of subchapter V. "Subchapter V of chapter 11 was created with the passage of the Small Business Reorganization Act to create an expedited process for small business debtors to efficiently reorganize." *Lafferty v. Off-Spec. Sols., LLC (In Re Off-Spec. Sols., LLC)*, 651 B.R. 862, 868 (B.A.P. 9th Cir. 2023).

The Debtors claim the circumstances are unusual because all the movants want is to sell the business. But based upon what has occurred so far in the cases, all the debtors-in-possession want is to continue to litigate the issue of franchise assumption. An impasse is not a building block to reorganization.

**B.**

The Debtors have not established a reasonable likelihood of a plan being confirmed in a reasonable time and that the grounds for conversion, dismissal, or removal of the debtors-in-

possession and expand the powers of the Subchapter V Trustee can
be reasonably justified and cured within a reasonable time.

The Debtors have not provided any evidence that a plan can
be confirmed within a reasonable time. The current plan before
the court cannot be confirmed for the reasons indicated above.
It is further not consensual that means a cramdown would be
necessary. Even if the plan was confirmable - it is not - given
the Debtors experience in chapter 11, it is not at all clear the
Debtors would be able to make the payments under the plan.
Further, the plan does not provide remedies if payments are not
made. Liquidation is only triggered under the Second Modified
Plan if the Debtors are unable to assume the franchise
agreements. So, there is no current pathway to an appropriate
reorganization.

This is also troubling as PLK has presented a declaration of
a potential purchaser for four of the franchises. Apparently an
offer was made for the purchase but no response was made to the
offer other than a later comment by the Debtors' principal, Mr.
Damani, that the offer was "too low." All of this establishes a
lack of an ability to reorganize within a reasonable period of
time.


                                    **C.**

The Debtors have not justified the problems facing these
cases or proposed a prompt cure.

The Debtors have said that they have an agreement on two
leases, one of which is for a closed restaurant. The majority of
the lessors are not in agreement. The Debtors did file a motion

to assume leases that the court did not grant because of the substantial administrative expense that may be incurred if the Debtors default.

No change in litigation strategy has been evidenced by the Debtors.  In fact, they have "doubled down" by hiring a separate appellate firm to pursue the appeal of the assumption issue.

No capital infusion is contemplated by the Debtors to shore up the unreliable cash flow and administrative solvency issues.

So, there is cause to convert the cases to chapter 7, dismiss the cases, or remove the debtors-in-possession and expand the powers of the Subchapter V Trustee.  There is no sustainable defense to these motions.


**IV.**

The issue then becomes whether the court should remove the debtors-in-possession and expand the powers of the Subchapter V Trustee, convert the cases to chapter 7, or dismiss the cases.


**A.**

Dismissal at this time does not seem viable.

PLK could pursue any remedies it has under the franchise agreements which may result in the closure of the restaurants. However, the creditors will receive nothing as a result of the transfer or sale of the restaurants.  Flagstar will maintain its lien.  However, the value of its collateral will rapidly deteriorate.  There are many creditors in these cases including PLK, Flagstar and a subordinate lienholder.  Those creditors pursuing their remedies will not only negatively affect the

administrative claimants who have allowed claims in this case but creditors with unsecured claims as well.

## B.

Expanding the powers of the subchapter V trustee has no real advantage in resolving the cases.

One difficulty is that a subchapter V trustee cannot file a Plan.  Only the debtor can file a plan under subchapter V. § 1189(a).  Though it is possible that a subchapter V trustee could file a joint plan with the debtor to achieve a mutual objective, based on the court's observations in these cases so far, that seems highly unlikely.

One advantage to expanding the powers of the subchapter V trustee would be the continuation of the business for a short period of time to permit an orderly liquidation.  At the hearing on these motions, Flagstar's counsel indicated Flagstar may consent to cash collateral use to facilitate a sale.  On the other hand, without a liquidation Plan, the cases will likely end up being converted anyway.  That means there will be additional administrative expenses incurred as the liquidation process proceeds.

A subchapter V trustee with expanded powers would also face the reality that a majority of these Debtors' landlords have not consented to extensions of the leases.  Under § 365(d)(4), absent affirmative agreements from all of the landlords, the subchapter V trustee would need to surrender possession of the franchise premises at the landlords insistence.

///

Even if the court expanded the subchapter V trustee's authority to include control of the pending appeal and the Florida litigation, the court envisions problems lurking. The Debtors' fall back position on this motion is to limit the expanded powers to exclude control of these litigations. Any question as to standing of the subchapter V trustee may result in this court having to be involved in additional litigation concerning how the appeal and Florida litigation will proceed. That is an inefficient use of judicial resources.

There is also at least a question as to the limits of any expanded power. Notably absent in subchapter V is any reference to a subchapter V trustee having the power to liquidate assets parallel to a duty of a chapter 7 trustee. See §704(a)(1). On the other hand, the power of a debtor-in-possession under subchapter V is not exclusive. § 1184; See *In Re Roe*, 23-32077-thp11, 2024 WL 206678 (Bankr. D. Or. January 18, 2024). The expansion of a subchapter V trustee's powers may be somewhat murky.

Finally, payment of the subchapter V trustee's fees may be questionable if the trustee's powers are expanded in these cases. The trustee will have duties under § 1183(a)(2) to investigate the debtor and report. The trustee will have to file operating reports and may have to file tax returns and provide tax information. See §§ 704(a)(8); 1183(a)(5). It is not clear that all of those duties would be compensated by way of a surcharge on secured creditors' collateral under § 506(c). But even if all services of the subchapter V trustee with expanded powers could

///

be compensated by surcharge or otherwise, there is very little
advantage over conversion of the cases to chapter 7.

**C.**

Though disruptive, the best interests of creditors and the
estates will be served by conversion of all cases to chapter 7.

Conversion will give full authority to the chapter 7 trustee
without the necessity for further court orders or interpretation
of those orders.

The court is mindful of the concerns of both PLK and
Flagstar concerning valuation of the franchises if they are
closed and liquidated. Though unusual, under § 721, a chapter 7
trustee can operate one or more franchise locations for a limited
period. Obviously, the chapter 7 trustee will need to make that
assessment and be comfortable with use of cash collateral to
operate the business. As mentioned above, a chapter 7 trustee
will have surcharge authority under § 506(c) for some or all of
the expenses incurred by the chapter 7 trustee.

A chapter 7 trustee will be able to objectively assess
whether the appeal of this court's rulings on the assumption
issue and the Florida litigation should be pursued.

Also, any fees allowed for the chapter 11 professionals
which have been unpaid will maintain their priority status
(subject to chapter 7 fees and costs). A chapter 7 trustee can
pursue any claw back from any "overpaid" administrative claimant
if that claimant has been paid more than a pro rata portion of
any distribution to that priority.

///

1      If there are any intercompany transactions among the

2 Debtors, a chapter 7 trustee can investigate and pursue recovery

3 of those as well. The cases have been pending for one year. A

4 chapter 7 trustee will have some time to evaluate and investigate

5 those issues.

6      Finally, it may be that unsecured creditors receive a

7 distribution from a chapter 7 trustee in one or more of these

8 cases. Mention was made at the oral argument on these motions

9 that a relative of the Debtors' principal may be willing to buy

10 the franchises for over three million dollars. Whether that sale

11 would be a possibility remains to be seen. However, that

12 suggests the possibility that the franchises may bring some value

13 to these estates and the creditors.

14      On balance, then, conversion seems the best alternative

15 under the facts of these cases and conversion will be ordered.

16

17                        **CONCLUSION**

18      For the foregoing reasons, the court will enter separate

19 orders converting Pinnacle Foods of California, LLC; Tyco Group,

20 LLC; and California QSR Management, Inc. to chapter 7 of the

21 Bankruptcy Code.

22

23 **Dated:** Mar 27, 2025              **By the Court**

24

25                           *René Lastreto II*

26                          **René Lastreto II, Judge**

                             **United States Bankruptcy Court**

27

28

**Instructions to Clerk of Court**
**Service List - Not Part of Order/Judgment**

     The Clerk of Court is instructed to send the Order/Judgment or other court generated document transmitted herewith to the parties below.  The Clerk of Court will send the Order via the BNC or, if checked ___, via the U.S. mail.

Pinnacle Foods of California LLC
Tyco Group, LLC
California QSR Management, Inc.
764 P. St., Ste. 105
Fresno, CA 93721

Walter R. Dahl
8757 Auburn Folsom Rd #2820
Granite Bay, CA 95746-2820

Office of the U.S. Trustee
United States Courthouse
2500 Tulare Street, Room 1401
Fresno, CA 93721

Michael Jay Berger
Law Office of Michael J. Berger
9454 Wilshire Blvd 6th Fl
Beverly Hills, CA 90212-2929

Hagop T. Bedoyan
McCormick Barstow
7647 N. Fresno Street
Fresno, CA 93720

Glenn Moses
Venable, LLP
801 Brickell Avenue, Suite 1500
Miami, FL 33131

Kevin J. Etzel
Vedder Price, P.C.
1633 Broadway, 31st Floor
New York, NY 10019