POSTED ON WEBSITE
NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| In re | ) Case No. 24-11015-B-11 |
| | ) |
| **PINNACLE FOODS OF CALIFORNIA LLC,** | ) Docket Control Nos. MJB-16 |
| | )                    and KCO-6 |
| Debtor. | ) |
| _____ | ) |
| In re | ) Case No. 24-11016-B-11 |
| | ) |
| **TYCO GROUP, LLC,** | ) Docket Control No. MJB-13 |
| | ) |
| Debtor. | ) |
| _____ | ) |
| In re | ) Case No. 24-11017-B-11 |
| | ) |
| **CALIFORNIA QSR MANAGEMENT, INC.,** | ) Docket Control No. MJB-12 |
| | ) |
| Debtor. | ) Date:  March 25, 2025 |
| | ) Time:  9:30 a.m. |
| | ) Place: 2500 Tulare St. |
| | )        Dept. B, Fifth Floor |
| _____ | )        Courtroom 13 |

**MEMORANDUM RULING ON MOTION FOR COMPENSATION FOR
LAW OFFICES OF MICHAEL JAY BERGER AND FOX ROTHSCHILD LLP**

_____

Michael J. Berger, Law Offices of Michael J. Berger, for Pinnacle
Foods of California, LLC, Tyco Group, LLC, CA QSR Management,
Inc., Debtors; Craig R. Tractenberg Fox Rothschild LLP, Pinnacle
Foods of California, LLC.

Glenn D. Moses, Venable LLP, for Popeyes Louisiana Kitchen, Inc.,
Hagop T. Bedoyan, Garrett R. Leatham, Garrett J. Wade, McCormick,
Barstow Sheppard, Wayte & Carruth, for Popeyes Louisiana Kitchen.

Walter R. Dahl, Subchapter V Trustee.

_____

RENÉ LASTRETO II, Bankruptcy Judge:

1

**INTRODUCTION**

This matter comes before the court on four fee applications filed in three closely-related cases filed under Chapter 11 Subchapter V as described below (collectively "the Popeyes Cases" and "the Popeyes Applications"). One application was brought by Fox Rothschild LLP ("Fox Rothschild"), special counsel in only one of the cases, but it represented work which was performed on behalf of all three debtors. The other three fee applications were brought separately by Michael Jay Berger ("Berger"), general bankruptcy counsel with an application filed in each case.

**I.**

**BACKGROUND**

The three Popeyes Cases include:

1. *In Re: Pinnacle Foods of California LLC ("Pinnacle"),* 24-11015 ("the Pinnacle Case");

2. *In Re: Tyco Group LLC ("Tyco"),* 24-11016 ("the Tyco Case"); and

3. *In Re: California QSR Management, Inc. ("QSR"),* 24-11017 ("the QSR Case").

Collectively, the three debtors will be referred to as "the Three Debtors." The four Popeyes Applications include the following:

1. Motion for Compensation by the Law Office of Fox Rothschild LLP ("the Fox Rothschild Application"). Pinnacle Case Doc. #429. Pinnacle DCN KCO-6.

///

///

2.   Motion for Compensation for Michael Jay Berger ("the Berger/Pinnacle Application"). Pinnacle Case Doc. #453. Pinnacle DCN MJB-16.

3.   Motion for Compensation for Michael Jay Berger ("the Berger/Tyco Application"). Tyco Case Doc. #327. Tyco DCN MJB-13.

4.   Motion for Compensation for Michael Jay Berger ("the Berger/QSR Application"). QSR Case Doc. #294. QSR DCN MJB-12.

Collectively, the latter three Applications involving Michael Jay Berger ("Berger") will be referred to as "the Berger Applications."

All four motions were set for hearing on 28 days' notice as required by Local Rule of Practice ("LBR") 9014-1(f)(1) and Fed. R. Bankr. P. ("Rule") 2002(a)(6).

On March 11, 2025, Popeyes Louisiana Kitchen, Inc. ("PLK"), Pinnacle's franchisor, filed an Opposition to the Fox Rothschild Application, asking the court to disallow $150,783.50 of the fees requested by Fox Rothschild for the reasons discussed more fully below.

On March 11, 2025, Walter R. Dahl, ("Dahl" or "Trustee"), the Subchapter V Trustee in these cases, filed an Opposition to the Berger/Pinnacle Application, with his arguments incorporated by reference into truncated Oppositions filed regarding the Berger/Tyco and Berger/QSR Applications. Pinnacle Doc. #462; Tyco Doc. #335; QSR Doc. #304. (Collectively, "the Dahl Oppositions").

The three Dahl Oppositions to the Berger Applications request denial of those Applications and possibly disgorgement of fees paid previously to Berger. Pinnacle Doc. #462. In the Opposition to the Berger/Pinnacle Application, Dahl raises

several issues to be discussed more fully below, but most of his objections are grounded in substantially the same reasons as were given by PLK in its opposition to the Fox Rothschild Application. *Id.*

Specifically, both PLK and Dahl argue that a substantial portion of the fees incurred by Fox Rothschild and by Berger were neither necessary nor beneficial to the estate because they were spent on a failed and quixotic effort to assume certain Franchise Agreements between Pinnacle/Tyco and PLK. Pinnacle Docs. #462, #463. Those efforts hinged entirely on the court's willingness to overlook 25-year-old binding Ninth Circuit precedent, something the court declined to do. *See Pinnacle Doc. #275 (Memorandum Opinion dated October 10, 2024)("the Assumption Memorandum").*

The relevant facts are more fully explicated in the Assumption Memorandum. But to briefly summarize, Pinnacle is a franchisee of PLK which owns and operates a network of six Popeyes fast food restaurants, five in Fresno, California and one in Turlock, California under the auspices of the Franchise Agreements. *Id.* Imran Damani ("Damani") is the owner of the Three Debtors. Pinnacle and Tyco are the actual franchisees, while QSR is a separate corporation used by Damani to manage the other two. *Id.* The parties agree that the reorganization of the Three Debtors is utterly dependent on Pinnacle being able to assume the Franchise Agreements and to continue operating as a Popeyes franchisee. *Id.* While Tyco was previously a Popeyes franchisee, it appears to be shut down, with only Pinnacle proposed to continue as an ongoing concern. *Id.*

///

Pinnacle moved to assume the Franchise Agreements pursuant to 11 U.S.C. § 365 but was opposed by PLK. Pinnacle Docs. #226, #245, #260. The basis of PLK's opposition was that pursuant to 11 U.S.C. § 365(c)(1), PLK was excused from accepting performance or rendering performance pursuant to the Franchise Agreements under the "hypothetical test" which was adopted by the Ninth Circuit in *Catapult Entertainment, Inc. v. Perlman (In Re Catapult Enter.)*, 165 F.3d 747 (9th Cir., 1999). *Id.* The court will not rehash its lengthy analysis of the hypothetical test and its counterpart, the "actual test," which the court discussed at length in the Assumption Memorandum. *Id.* Suffice to say, the court concluded that *Catapult* was binding law and that, notwithstanding the other provisions of § 365, Pinnacle could not, under the present circumstances, assume the Franchise Agreements without PLK's consent which was emphatically not given. *Id.* The court later reiterated its position in its order denying Pinnacle's *Motion for Reconsideration*. Pinnacle Doc. #353. Undaunted, Pinnacle appealed to the District Court, and that appeal is ongoing. *See In re Pinnacle Foods of California, LLC,* 1:25-CV-00132-JLT (E.D.Ca.).

With the stage thus set, the court now turns to the individual Applications, and the Oppositions to each of them.

## II.

## DISCUSSION

### A.     GENERAL PRINCIPLES.

11 U.S.C. § 330(a)(1)-(4) states in relevant part:

///

(1) After notice to the parties in interest and the United States Trustee and a hearing, … the court may award …

    (A) **reasonable compensation for actual, necessary services rendered** by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person; and

    …

(2) **The court may, on its own motion or on the motion of the United States Trustee, the United States Trustee for the District or Region, the trustee for the estate, or any other party in interest, award compensation that is less than the amount of compensation that is requested.**

(3) **In determining the amount of reasonable compensation to be awarded to an examiner, trustee under chapter 11, or professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—**

    …

    (C) **whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;**

    …

(4)

    (A) Except as provided in subparagraph (B), the court shall **not** allow compensation for—

       …

                    (ii) services that were not—

                          (I) **reasonably likely to benefit the debtor's
                          estate**; or

                          (II) necessary to the administration of the
                          case.

11 U.S.C.S. § 330(a)(1)-(4)(emphasis added).

     Compensable professional work does not equate to whether
work was necessary and reasonable. *Unsecured Creditors Committee
v. Puget Sound Plywood*, 924 F. 2d 955, 958 (9th Cir. 1991). A
professional must exercise billing judgment. *Id.* at 959. That
means balancing the effort against the result that might be
achieved. *Id.* at 961.

     Relatedly, 11 U.S.C. § 331 authorizes an interim award after
notice and hearing subject to subsequent final approval by the
court pursuant to § 330.

     Thus, in summation, the court must review each fee
application to determine, *inter alia*, whether the services for
which the attorney billed were truly necessary services that were
beneficial to the estate, and the court is authorized to reduce
any fees awarded below what was requested to account for any time
billed on work that was, in the court's opinion, neither
necessary nor beneficial to the estate.

     The court acknowledges that assumption of the leases was
vitally important to a successful reorganization of the Three
Debtors. And the Debtors' ability to assume those leases was, in
turn, dependent on either the consent of PLK or the Debtors
ability to compel PLK's consent through § 365. It was reasonable
for Pinnacle and Tyco to pursue their Motions to Assume the

Franchise Agreements. In these cases, Pinnacle was the "trial balloon" for this crucial issue.

What was not so clearly reasonable and certainly not beneficial to the three estates was continuing to pursue a course the court had already rejected in light of controlling and well-established Ninth Circuit precedent. Accordingly, the court is inclined to deny the Applications to the extent that the attorneys involved have billed for work performed on matters relating to the *Motions to Assume* that came after the court issued the Assumption Memorandum on October 10, 2024, specifically, the Motions to Reconsider and any work performed by these attorneys in preparation for the appeal to the District Court. The court notes that Pinnacle is represented by entirely different counsel on appeal who are not being paid by the estate.

Likewise, the court is inclined to deny some of the Applications to the extent that they request fees for time spent preparing the *Second Amended Small Business Plans* dated March 7, 2025 ("the March 7 Plans") and filed in the Pinnacle and QSR Cases. Pinnacle Doc. #460; QSR Doc. #302. The court was very clear at the hearing conducted on February 4, 2025 ("the February 4 Hearing"), that any new plan must do something to change the trajectory of the cases. Despite that, the two March 7 Plans are clearly just placeholder plans which still propose reorganizations for Pinnacle and QSR that are utterly dependent on a reversal of the court's ruling on assumption of the Franchise Agreements. The Tyco franchise location was closed at that time.

///

The Fox Rothschild Application only covers work performed during the period from **July 7, 2024, through December 31, 2024,** and so no fees incurred for work on the March 7 Plans after the court's comments during the February 4 Hearing are before the court. The Berger Applications, however, cover the period from **September 6, 2024, through February 24, 2025,** and so work performed by Berger on the March 7 Plans may be excludable.

The court further notes that the Trustee has raised additional objections which the Trustee argues to be grounds for denying the Berger Applications *in toto* and perhaps even requiring him to disgorge attorney's fees already obtained from his First Application(s). The court will address those objections in its discussion of the Berger Applications, below.

With those principles in mind, the court will consider each of the Applications. Any entries which, in the court's view, are not beneficial to the estate because (1) they represent billing (a) for the Motion for Reconsideration or for the Appeal and (b) were incurred after October 10, 2024, or (2) they represent billing for the March 7 Plan that was incurred after the February 4 Hearing will be excluded ("Excluded Entries").

**B.    THE FOX ROTHSCHILD FEE APPLICATION.**

Fox Rothschild requests interim compensation in the sum of **$209,201.92** under 11 U.S.C. § 330 and § 331 for work performed on behalf of Pinnacle. Pinnacle Doc. #429. This amount consists of **$204,089.00** in fees and **$5,112.92** in expense reimbursement for the period from **July 7, 2024, through December 31, 2024.** *Id.* This is Applicant's first fee application.

Imran Damani ("Damani"), the principal for the Three Debtors, executed a Declaration dated February 3, 2025, indicating that he has reviewed the fee application and approves the same. Pinnacle Doc. #432.

On March 11, 2025, Popeyes Louisiana Kitchen, Inc. ("PLK"), Pinnacle's franchisor, filed an Opposition, asking the court to disallow $150,783.50 of the requested fees for the reasons discussed more fully below.

Fox Rothschild was retained effective as of July 7, 2024, by an order of this court dated September 1, 2024 ("the Retention Order"). Pinnacle Doc. #244. The Retention Order stated:

a.   No compensation is permitted except upon Court order following application with notice and a hearing pursuant to 11 U.S.C. § 330(a); and

b.   Compensation will be at the "lodestar rate" applicable at the time that services are rendered in accordance with the Ninth Circuit decision *In re Manoa Fin. Co.*, 853 F.2d. 687 (9th Cir. 1988). No hourly rate referred to in the Application is approved unless unambiguously so stated in this order or in a subsequent order of this Court.

*Id.* The Retention Order also stated:

> Applicant shall be entitled to draw on the Retainer to pay Applicant's legal fees and expenses approved by the Court pursuant to 11 U.S.C. §§ 330 and 331. Applicant may not draw on the Retainer in the absence of an order of this Court allowing Applicant's fees and expenses.

*Id.*

The Retainer alluded to in the prior quoted paragraph refers to $20,000.00 held in trust by Fox Rothschild and consisting of $15,000.00 paid to Fox Rothschild by Damani post-petition, plus

another $5,000.00 paid to Fox Rothschild by Damani's father,
Badruddin Damani. Pinnacle Docs. #429, #433. Fox Rothschild has
previously declared (in the Exhibits accompanying the Application
for Authorization of Employment) that the elder Damani has
guaranteed all the firm's fees and expenses. Pinnacle Doc. #213.

Fox Rothschild 's firm provided **232.70** billable hours at the
following rates, totaling **$204,089.00** in fees:

| ATTORNEY | HOURLY RATE | APPLICATION HOURS | TOTAL FEES |
|---|---|---|---|
| Craig R. Tractenberg – Partner | $960.00 | 155.9 | $149,664.00 |
| Craig R. Tractenberg – Partner | $960.00 | 1.3 | No Charge |
| Keith C. Owens – Partner | $895.00 | 49.9 | $44,660.50 |
| Dharvi Goyal– Associate | $440.00 | 12.9 | $5,676.00 |
| Dharvi Goyal – Associate | $440.00 | 0.8 | No Charge |
| **Subtotal** | | **220.8** | **$200,000.50** |
| **Paraprofessional** | **HOURLY RATE** | **APPLICATION HOURS** | **TOTAL FEES** |
| Patricia M. Chlum – Paralegal | $400.00 | 8.5 | $3,400.00 |
| Patricia M. Chlum – Paralegal | $400.00 | 0.7 | 0 |
| Sarah Pennebaker – Sr. KM Research Analyst | $255.00 | 0.7 | $178.50 |
| Brooke Coleman – KM Research Analyst | $255.00 | 2.0 | $510.00 |
| **Subtotal** | | **11.9** | **$4,088.50** |

*Id (Exhibit 2 – "Summary of Professionals").* The total fees
incurred by attorneys and by paraprofessionals in this
application is **$204,089.00.** Broken up by task, Fox Rothschild
billed as follows:

///

///

///

///

///

| Task Description | Hours | Total |
|---|---|---|
| B110 Case Administration | 3.9 | $1,676.50 |
| B130 Asset Disposition | 5.7 | $5,459.00 |
| B140 Stay Relief/Adequate Protection | 0.9 | $864.00 |
| B160 Fee/Employment Applications | 11.8 | $7,770.00 |
| **B185 Assumption/Rejection of Leases and Contracts** | 158.6 | $143,149.00 |
| **B190 Other Contested Matters** | 35.8 | $34,368.00 |
| **B320 Plan and Disclosure Statement** | 8.0 | $7,634.50 |
| B410 General Bankruptcy Advice/Opinions | 8.0 | $3,520.00 |
| | 232.7 | $204,441.00 |

Pinnacle Doc. #433 (Exhibit 3 – Task/Description

Summary)(emphasis added). After application of the $20,000.00

retainer, the remaining fee award sought by this application is

**$184,089.00.**

There appears to be a discrepancy between Exhibits 2 and 3,

with the Task/Description Summary listing total fees incurred

that are $352.00 higher than the fees listed on the Summary of

Professionals. The court assumes that this is the result of hours

billed which were not charged to the client, as several such

entries are found in the billing records. Pinnacle Doc. #433

(Exhibit 1 – Complete Billing Records).

Fox Rothschild also incurred **$5,112.92** in expenses:

| Expenses | Cost |
|---|---|
| Good Standing Certificate | $25.00 |
| Messenger Service/Federal Express | $3,594.40 |
| Document Retrieval | $18.30 |
| Reprographics – Color | $17.00 |
| Reprographics – B/W | $1,091.00 |
| Postage | $271.05 |
| Westlaw Research | $96.17 |
| **TOTAL** | **$5,112.92** |

Pinnacle Doc. #433 (Exhibit 4). The expenses are not broken down

by date or associated task, but the court does not find $5,112.92

to be out of line for expenses incurred in a Chapter 11 as

complicated as this one turned out to be.

By and large, the court finds most of these services and expenses reasonable, actual, and necessary though the professional hourly rate exceed the rates charged in this district by attorneys with similar expertise. The exception to that finding is the work related to the assumption-related matters which were explicitly premised on a hypothetical reversal of the court's ruling in the Assumption Memorandum and the order accompanying it.

Of the 232.70 hours billed by Fox Rothschild in this case, 158.60 hours representing $143,149.00 is specifically billed as pertaining to assumption/rejection issues. Pinnacle Doc. #429. These entries are grouped in the motion and exhibits under the heading of "Task B18." Pinnacle Docs. #429, #433 (Exhibit 3). Admittedly, the issues concerning assumption of the franchise agreements have been the most complicated and time-consuming aspect of this case. There are several franchise agreements between the Three Debtors and PLK. Pinnacle Doc. #433. Assumption of the Franchise Agreements has been strenuously opposed by the franchisor throughout these proceedings. *See Docket generally.*

That opposition extends to the instant fee application, and PLK argues that Applicant's fees should be substantially reduced because Applicant's services were neither necessary nor beneficial to the estate. Doc. #463. PLK argues that, out of a total of $204,089.00 in fees (minus the retainer) sought by Applicant, $150,783.50 (by PLK's estimate) relate to Debtor's failed efforts to assume the Franchise Agreements between Pinnacle/Tyco and PLK. *Id*. Those figures appear to include everything that Fox Rothschild has billed pertaining to the

Franchise Agreements since the inception of the case, both those grouped under Task B185 and those grouped under other billable tasks, most prominently the "Task B190" hours billed for "Other Contested Matters." Pinnacle Docs. #464, #433, #495.

As the court has already noted, it was not unreasonable for Debtors and their counsel to believe that the *Motion to Assume* might be both necessary and beneficial to the estate. Indeed, one might argue that reorganization would be practically impossible without assuming the Franchise Agreements and that bringing the motions might possibly have had the effect of softening PLK's hardball position. Accordingly, the court will not exclude all the hours billed for Assumption/Rejection related matters as PLK desires.

The hours billed *after* the issuance of the Assumption Memorandum are another matter. At that point, in the court's view, it became unreasonable for the Debtors to continue beating the dead horse which is the § 365(c) hypothetical test. The Ninth Circuit decided *Catapult* roughly a quarter-century ago and has given no indication of a desire to revisit the issue. Thus, the court finds that, to the extent that Fox Rothschild billed for work performed on the Popeyes cases pertaining to the assumption of the Franchise Agreements *after* the issuance of the Assumption Memorandum on October 10, 2024, (mainly work on the Motion for Reconsideration and the subsequent appeal), that work was neither necessary nor beneficial to the bankruptcy estate, and those billable hours will be excluded from any fee award.

The burden is on the applicant to demonstrate that the services were reasonably likely to benefit the estate at the time

the services were rendered.  *In re Mednet*, 251 B.R. 103, 108 (B.A.P. 9th Cir., 2000).  A bankruptcy court must also examine the circumstances and the manner in which services are performed and the results achieved in order to arrive at a determination of a reasonable fee allowance.  *Id.*

At the hearings on these fee applications, both applicants argued that applicants should not be "penalized" because their client did not prevail on the Assumption Motion and the Reconsideration Motion, but that argument misapprehends their burden.  The court is not reducing fees because applicants did not prevail.  The fees are being reduced because applicant cannot show that it was reasonably likely their services would benefit the estate after the Assumption Memorandum.  If applicants' arguments were correct, the court would not have allowed fees for the original assumption motion at all.

At the time the post Assumption Memorandum services were rendered, the Three Debtors and Fox Rothschild (as well as Berger, the general counsel) knew some salient facts.  The Ninth Circuit is a "hypothetical test" jurisdiction.  This court was constrained to follow *Catapult*.  The court did follow *Catapult* and showed no indication that *Catapult's* holding was inapplicable.  Debtors' arguments about the primacy of the California Franchise Relations Act and the alleged inapplicability of the Lanham Act were not persuasive to the court. Likewise, no persuasive authority criticizing or limiting *Catapult* in the Ninth Circuit was presented to the court.

Thus, the services related to the motion to reconsider, and the appeal were not beneficial or helpful to the administration

of the estates at the time they were performed. § 330 (a)(3)(C).
Accordingly, the Fox Rothschild application for fees will be
reduced.

After review of Fox Rothschild's billing records, the court
has identified the following billing entries as representing work
performed between October 11, 2024, and December 31, 2024, which
should be excluded or reduced.

1.   **B185 Assumption/Rejection**. The total billed for B185
Tasks is $143,149.00. This amount will be reduced by $47,170.00.

2.   **B190 Other Contested Matters**. The total billed for B190
Tasks is $34,368.00. This amount will be reduced by $1,152.00.

3.   **B320 Plan and Disclosure Statement**. The total billed
for B320 Tasks is $7,634.50, but some of these entries include
matters pertaining to the Motion to Reconsider. This amount will
be reduced by $1,248.00.

4.   The total fee reduction for all three Task Groups
listed above is **$49,570.50.**

*See Appendix A.*

A total of **$49,570.50** will be deducted from the requested
fee amount of **$204,089.00**, leaving a total of **$154,518.50** in
compensable fees. After application of the $20,000.00 retainer,
the court will grant a fee award of **$134,518.50** and expense
reimbursement in the amount of **$5,112.92** on an interim basis for
a total interim award of **$139,631.42.**

However, awarding fees and expenses to an attorney is not
the same as directing that the attorney actually be paid. Whether
the court will allow Fox Rothschild to be paid anything at this
time will be discussed below.

**C.    THE BERGER/PINNACLE FEE APPLICATION.**

Berger requests interim compensation in the sum of **$59,294.27** for work done on behalf of Pinnacle Doc. #453. This amount consists of **$57,427.00** in fees and **$1,867.27** in expenses from **September 6, 2024, through February 24, 2025.** *Id.* Damani, as principal for Pinnacle, executed a statement of consent dated February 28, 2025, indicating that Debtor has read the fee application and approves the same. Pinnacle Doc. #458. The motion is accompanied by Berger's Declaration and Exhibits in the form of billing and expense records, resumes of Berger and those in his firm, and a copy of the order approving Berger's employment. Pinnacle Docs. ##455-56, #458.

On March 11, 2025, Walter R. Dahl, ("Dahl" or "Trustee"), the Subchapter V Trustee in this case, filed an Opposition to the motion. Pinnacle Doc. #462.

The court approved Berger's employment by order dated June 6, 2024. Pinnacle Doc. #89. According to the moving papers, Berger was paid a retainer of $20,000.00 prepetition along with $1,738.00 for the Chapter 11 filing fee. Pinnacle Docs. #453, #456. Berger incurred $14,236.50 in prepetition fees, and that amount plus the filing fee were earned by Berger and withdrawn from Applicant's client trust account prior to the filing of the case. *Id.* The unearned retainer of $5,763.50 remained in Berger's trust account. *Id.*

This is Berger's second fee application filed in the instant case. Pinnacle Doc. #453. On October 31, 2024, the court entered an order granting the First Interim Fee Application and awarding $68,453.00 in fees and $1,110.21 in costs. Pinnacle Doc. #310.

After application of the retainer balance of $5,763.50, Pinnacle paid Berger the balance of $64,799.71 awarded in the First Fee Application. *Id.*

For this Second Application, Berger's firm provided **103.9** billable hours (plus an additional 14.40 hours not billed) at the following rates, totaling **$57,427.00** in fees:

| Professional | Rate | Hours Billed | Total Fees |
|---|---|---|---|
| Michael Jay Berger | $645.00 | 51.10 | $32,959.50 |
| Sofya Davtyan | $595.00 | 9.90 | $5,890.50 |
| Robert Poteete | $475.00 | 33.90 | $16,102.50 |
| Yathida Nipha | $275.00 | 8.80 | $2,420.00 |
| Karine Manvelian | $275.00 | 0.20 | $55.00 |
| Peter Garza | $200.00 | 0.00 | $0.00 |
| **Total Hours & Fees** | | **103.9** | **$57,427.50** |

Pinnacle Doc. #453. Berger also incurred **$1,867.27** in expenses, primarily in the form of postage and photocopying. *Id.*

Dahl opposes this Application. Pinnacle Doc. #462. Trustee first notes that, according to the operating reports filed between March 2024 and January 2025, the Three Debtors were collectively operating at a loss of $70,500.00. *Id.* Trustee notes that § 330(a) authorizes this court to award "reasonable compensation for actual, necessary services rendered" by a professional person such as Applicant. *Id.* Likewise, § 330(a)(4) bars the court from allowing compensation for services that were not reasonably likely to benefit the estate. *Id.*

According to the record, Berger received a total of $29,402.00 for services performed prepetition on behalf of the Three Debtors, and Berger sought and was awarded $129,960 for services performed as part of his representation of the Three

Debtors from the petition date through September 5, 2024. *Id.* Including the award sought in this Application and the awards sought in the applications filed in the other two cases, Berger "proposes to be paid compensation totaling $243,473 for its representation of the Three Debtors, none of whom have proposed plans of reorganization which would be able to be confirmed." *Id.* Trustee also urges disgorgement for some or all of the fees previously allowed and paid to Berger, on the grounds that much of that compensation was for services "not reasonably likely to provide identifiable, tangible and material benefit to the estate," including specifically:

a.   Filing, and subsequently abandoning a motion for substantive consolidation, and failing to thereafter file a motion for joint administration, leading to needless triplication of pleadings;

b.   Failing to timely file plans of reorganization as required by Bankruptcy Code § 1189(a), and seeking extensions pursuant to Bankruptcy Code § 1189(b);

c.   Filing numerous motions seeking to assume unexpired leases of real property prior to obtaining confirmation of plans of reorganization, thus requiring parties to oppose such motions to prevent imposition of significant administrative expense liability;

d.   Allowing the outside deadline of Bankruptcy Code § 365(d)(4)(B) to lapse, thus potentially preventing the estates to obtain the economic benefits of assuming and assigning such leases;

///

e.     Filing and prosecuting motions to assume the PLK franchise agreements despite the long-standing determination by the 9th Circuit that the "hypothetical" rather than the "actual" test is applicable to Bankruptcy Code § 365(c)(1), and seeking reconsideration of such motions; and,

f.     Filing and prosecuting plans of reorganization which cannot be confirmed due to legal constraints and lack of feasibility.

*Id.*

On March 18, 2025, Berger filed a Reply to Dahl's Opposition. Pinnacle Doc. #497.

Berger's services here included, without limitation: asset disposition; business operations; case administration; claims administration and objections; fee/employment applications; financing; litigation; plan and disclosure statement; and relief from stay proceedings. Doc. #456.

By and large, the court finds most of these services and expenses reasonable, actual, and necessary. The exception to that finding is the work related to the assumption-related matters and to the March 7 Plans which were explicitly premised on a hypothetical reversal of the court's ruling in the Assumption Memorandum and the order accompanying it.

For the reasons outlined above, it was not unreasonable for Debtors and their counsel to believe that the *Motion to Assume* might be both necessary and beneficial to the estate. Accordingly, the court will not exclude all the hours billed for Assumption/Rejection related matters as Dahl urges.

///

The hours billed *after* the issuance of the Assumption Memorandum are another matter. As the court has noted, it became unreasonable for the Debtors to continue on a course dependent on assuming the Franchise Agreements after the court issued the Assumption Memorandum. Thus, the court finds that, to the extent that Berger billed Pinnacle for work performed on the Popeyes cases pertaining to the assumption of the Franchise Agreements *after* the issuance of the Assumption Memorandum on October 10, 2024, (mainly work on the Motion for Reconsideration and the subsequent appeal), that work was neither necessary nor beneficial to the bankruptcy estate, and those billable hours will be excluded from any fee award.

That finding extends to work performed by Berger on Pinnacle's March 7 Plan, which the court has already described as an unconfirmable place-holder plan that still relied on the faulty premise that assumption of the Franchise Agreements was achievable.

None of the work described above and for which Berger billed Pinnacle was either beneficial or helpful to the administration of the estates at the time the work was performed. § 330 (a)(3)(C). Accordingly, the Berger/Pinnacle Application for fees will be reduced.

After review of the billing records, the court has identified the following billing entries as representing work performed between **September 6, 2024, through February 24, 2025,** which should be excluded or reduced.

///

///

1. **Business Operations.** The total billed for Business Operations is $17,926.50. This amount will be reduced by $3,208.00.

2. **Case Administration.** The total billed for Case Administration is $5,921.00. This amount will be reduced by $64.50.

3. **Financing.** The total billed for Financing is $4,529.50. This amount will be reduced by $64.50.

4. **Litigation.** The total billed for Litigation is $2,413.50. This amount will be reduced by $1,870.50.

5. **Plan and Disclosure Statement.** The total billed for Plan and Disclosure Statement is $15,985.00. This amount will be reduced by $2,188.00.

6. The total fee reduction for all four Task Groups listed above is **$ 7,395.50.**

*See Appendix B.*

A total of **$7,395.00** will be deducted from the requested amount of **$57,427.00,** leaving a total of **$50,032.00** in compensable fees. There are no remaining retainer funds to apply to the outstanding fees. The court will grant a fee award of **$50,032.00** and expense reimbursement in the amount of **$1,867.27** on an interim basis for a total interim award of **$51,899.27.**

As with the other Applications, whether payment will be authorized at this time will be discussed below.

**D.    THE BERGER/TYCO APPLICATION**

Berger requests interim compensation in the sum of **$16,275.75** under 11 U.S.C. § 330 and $331 for work performed on

behalf of Tyco. Tyco Doc. #453. This amount consists of **$15,593.50** in fees and **$682.25** in expenses from **September 6, 2024, through February 24, 2025.** *Id.*

Imran Damani, principal for DIP, executed a statement of consent dated February 28, 2025, indicating that Debtor has read the fee application and approves the same. Tyco Doc. #332. The motion is accompanied by (1) the Declaration of Michael Jay Berger, and (2) Exhibits in the form of billing and expense records, resumes of Berger and his firm, and a copy of the order approving Applicant's employment. Tyco Docs. ##329-30. On March 11, 2025, Walter R. Dahl, ("Dahl" or "Trustee"), the Subchapter V Trustee in this case, filed a truncated Opposition to the motion based on the same arguments presented in the Opposition to the Berger/Pinnacle Application. Tyco Doc. #335.

The court approved Applicant's employment by order dated Jun 6, 2024. Tyco Doc. #89. According to the moving papers, Applicant was paid a retainer of $20,000.00 prepetition along with $1,738.00 for the Chapter 11 filing fee in the Tyco Case. Tyco Docs. #453, #456. Applicant incurred $14,236.50 in prepetition fees, and that amount plus the filing fee were earned by Applicant and withdrawn from Applicant's client trust account prior to the filing of the case. *Id.* The unearned retainer of $5,763.50 remains in Applicant's trust account. *Id.*

This is Applicant's second fee application. Tyco Doc. #327. On October 31, 2024, the court entered an order granting the First Interim Fee Application and awarding $20,491.00 in fees and $710.71 in costs. Tyco Doc. #310. After application of the ///

23

retainer balance of $16,179.00, Debtor paid Applicant the balance
of $5,022.71 awarded in the First Fee Application. *Id.*

Applicant's firm provided **103.9** billable hours (plus an
additional 14.40 hours not billed) at the following rates,
totaling **$15,493.50** in fees:

| Professional | Rate | Hours Billed | Total Fees |
|---|---|---|---|
| Michael Jay Berger | $645.00 | 10.40 | $6,708.00 |
| Sofya Davtyan | $595.00 | 2.90 | $1,725.50 |
| Robert Poteete | $475.00 | 12.00 | $5,300.00 |
| Yathida Nipha | $275.00 | 6.100 | $1,677.50 |
| Karine Manvelian | $275.00 | 0.30 | $82.50 |
| Peter Garza | $200.00 | 0.00 | $0.00 |
| **Total Hours & Fees** | | **31.70** | **$15,493.50** |

Tyco Doc. #330. Applicant also incurred **$682.25** in expenses,
primarily in the form of postage and photocopying. *Id.* These
combined fees and expenses total **$16,275.75.**

The Trustee opposes this Application for the same reasons
set forth in the Opposition to the Berger/Pinnacle Application.
Tyco Doc. #462.

The same analysis used by the court in calculating the fee
reduction for the Berger/Pinnacle Application applies here,
though Berger billed Tyco significantly less than Pinnacle.

Berger's services here included, without limitation: asset
analysis and recovery; business operations; case administration;
claims administration and objections; fee/employment
applications; financing; litigation; plan and disclosure
statemen; and relief from stay proceedings. Tyco Doc. #330. The
court finds these services to be reasonable except for those
///

matters pertaining to the motion for reconsideration and appeal and the March 7 Plan.

After review of the billing records, the court has identified the following billing entries as representing work performed between **September 6, 2024, through February 24, 2025,** which should be excluded or reduced.

1. **Business Operations.** The total billed to Tyco for Business Operations is $3,408.00. This amount will be reduced by $64.50.

2. **Plan and Disclosure Statement.** The total billed to Tyco for Plan and Disclosure Statement is $2,384.50. This amount will be reduced by $129.00.

3. The total fee reduction for both Task Groups listed above is **$193.50.**

*See Appendix C.*

A total of **$193.50** will be deducted from the requested amount of **$15,493.50,** leaving a total of **$15,300.00** in compensable fees. There are no remaining retainer funds to apply to the outstanding fees. The court will grant a fee award of **$15,300.00** and expense reimbursement in the amount of **$682.25** on an interim basis for a total interim award of **$15,982.25**

As with the other Applications, whether payment will be authorized at this time will be discussed below.

**E. THE BERGER/QSR APPLICATION**

Berger requests interim compensation in the sum of **$11,350.16** under 11 U.S.C. § 330 and $331 for work performed on behalf of QSR. QSR Doc. #294. This amount consists of **$10,730.00**

1   in fees and **$620.16** in expenses from **September 6, 2024, through**
2   **February 24, 2025.** *Id.*

3       Imran Damani, principal for DIP, executed a statement of
4   consent dated February 28, 2025, indicating that Debtor has read
5   the fee application and approves the same. QSR Doc. #301. The
6   motion is accompanied by the Declaration of Michael Jay Berger
7   and Exhibits in the form of billing and expense records, resumes
8   of Berger and those in his firm, and a copy of the order
9   approving Applicant's employment. QSR Docs. ##296-97.

10      On March 11, 2025, Walter R. Dahl, ("Dahl" or "Trustee"),
11  the Subchapter V Trustee in this case, filed a truncated
12  Opposition to the motion based on the same arguments presented in
13  the Opposition to the Berger/Pinnacle Application. QSR Doc. #304.

14      As a threshold matter, the court notes that ordinarily this
15  Application would be denied on procedural grounds for failure to
16  comply with the Local Rules. LBR 9004-2(a)(6), (b)(5), (b)(6),
17  (e)(3), LBR 9014-1(c), and (e)(3) are the rules about Docket
18  Control Numbers ("DCN"). These rules require a DCN to be in the
19  caption page on all documents filed in every matter with the
20  court and each new motion requires a new DCN. The DCN shall
21  consist of not more than three letters, which may be the initials
22  of the attorney for the moving party (e.g., first, middle, and
23  last name) or the first three initials of the law firm for the
24  moving party, and the number that is one number higher than the
25  number of motions previously filed by said attorney or law firm
26  in connection with that specific bankruptcy case. Each separate
27  matter must have a unique DCN linking it to all other related
28  pleadings.

On February 3, 2025, the debtor corporation in this Chapter 11 Subchapter V case filed its Chapter 11 Small Business Plan using DCN MJB-12. QSR Doc. #272. On February 25, 2025, this Motion for Compensation was filed, also using DCN MJB-12. QSR Doc. #294. Therefore, it does not comply with the local rules. Each separate matter filed with the court must have a different DCN.

Nevertheless, because the Three Cases are so intertwined and the fee applications filed by Berger in the other two cases are not procedurally deficient, the court will overlook the procedural error so that all three applications can be dealt with in a single hearing.

The court approved Berger's employment by order dated Jun 6, 2024. QSR Doc. #96. According to the moving papers, Berger was paid a retainer of $20,000.00 prepetition along with $1,738.00 for the Chapter 11 filing fee. QSR Docs. #272, #297. Berger incurred $11,344 in prepetition fees, and that amount plus the filing fee were earned by Berger and withdrawn from Berger's client trust account prior to the filing of the case. *Id.* The unearned retainer of $8,626.00 remained in Berger's trust account. *Id.*

This is Berger's second fee application filed in the instant case. QSR Doc. #294. On October 31, 2024, the court entered an order granting the First Interim Fee Application and awarding $40,016.00 in fees and $4,114.29 in costs. QSR Doc. #230. After application of the retainer balance of $8,656.00, Debtor paid Berger the balance of $35,474.29 awarded in the First Fee Application. *Id.*

For this Second Application, Berger's firm provided **20.00** billable hours (plus an additional 7.40 hours not billed) at the following rates, totaling **$10,730.00** in fees:

| Professional | Rate | Hours Billed | Total Fees |
|---|---|---|---|
| Michael Jay Berger | $645.00 | 8.60 | $5,547.50 |
| Sofya Davtyan | $595.00 | 4.10 | $2,439.50 |
| Robert Poteete | $475.00 | 4.40 | $2,090.00 |
| Yathida Nipha | $275.00 | 2.90 | $653.50 |
| Karine Manvelian | $275.00 | 0.00 | $0.00 |
| Peter Garza | $200.00 | 0.00 | $0.00 |
| **Total Hours & Fees** | | **20.00** | **$10,730.50** |

QSR Doc. #453. Berger also incurred **$620.16** in expenses, primarily in the form of postage and photocopying. *Id.* These combined fees and expenses total **$11,350.16.**

The Trustee opposes this Application for the same reasons set forth in the Opposition to the Berger/Pinnacle Application. Tyco Doc. #462.

In principle, the same analysis used by the court in calculating the fee reduction for the Berger/Pinnacle Application should apply here. However, after review of the billing records, the court has not identified any billing entries for QSR which should be excluded or reduced. This is because neither the motion for reconsideration/appeal nor the new plan generated any work performed on behalf of QSR for which that Debtor was billed. Accordingly, the fees requested in this Application will not be reduced.

Accordingly, the court will grant a fee award of **$10,730.50** and expense reimbursement in the amount of **$620.16** on an interim basis for a total interim award of **$11,350.66.**

As with the other Applications, whether payment will be authorized at this time will be discussed below.

**F.    PAYMENT IS NOT AUTHORIZED AT THIS TIME.**

Notwithstanding the preceding analysis, neither Fox Rothschild nor Berger are entitled to payment of the fees and expense reimbursement awarded at this time. Contemporaneously with the issuance of this Memorandum Opinion, the court issued an order that all three of the Debtor Cases be converted from Chapter 11 Subchapter V to Chapter 7 for liquidation. Such conversion affects fees and expenses awarded on an interim basis by making them Chapter 11 administrative claims subject to priority and subordinate to any administrative claims arising within the Chapter 7 case.

> Section 726(b) provides that payments specified in certain paragraphs of section 507 (including administrative claims) "shall be made pro rata" among claims of a kind specified in a particular paragraph, except that following conversion to Chapter 7, Chapter 7 administrative claimants shall have priority over other administrative claimants. *See* 11 U.S.C. § 726(b)(emphasis added). To achieve pro rata distribution among a class of claimants, a court can order those claimants who have received payment during the course of a case to disgorge whatever amount is necessary to equalize the percentage of payments among all creditors in that class. *Shaia v. Durrette, Irvin, Lemons & Bradshaw, P.C. (In re Metropolitan Elec. Supply Corp.)*, 185 B.R. 505, 509-10 (Bankr. E.D. Va. 1995) (collecting cases at footnote 4).

> Before a court applies section 726(b), property of the debtor must be administered and reduced to cash. To the extent a party has a valid lien on property that was used to produce the cash for the estate, that lien is paid first from the proceeds of the liquidation of that property. *United States v. Fed. Deposit Ins. Corp.*, 899 F. Supp. 50, 54 (D. R.I. 1995) ("Federal bankruptcy law provides that if the property managed by the receiver [trustee] is sold to pay debts, the proceeds of the sale are used first to satisfy valid liens on the property, next for any exemptions the debtor may claim,

and finally to pay claims enumerated in [section]
726."); *Waldschmidt v. Comm'r of I.R.S. (In re
Lambdin*), 33 B.R. 11, 13 (Bankr. M.D. Tenn. 1983).
The remaining funds from the liquidation of that
property are distributed to the debtor to the extent he
or she has claimed an exemption in it. *Lambdin*, 33 B.R.
at 13. Only the excess remaining after satisfaction of
the lien and the exemption is available to pay claims
against the estate in accordance with section 726. *Id.*;
*see also In re Am. Resources Management Corp.*, 51 B.R.
713, 719 (Bankr. D. Utah 1985)("As a general rule,
expenses of administration must be satisfied from
assets of the estate not subject to liens. . . . Only
surplus proceeds are available for distribution to
creditors of the estate and administrative claimants.
Therefore, absent equity in the collateral,
administrative claimants cannot look to encumbered
property to provide a source of payment for their
claims.")(emphasis added).

*Rus, Miliband & Smith, APC v. Yoo (In re Dick Cepek,*

*Inc.)("Cepek")*, 339 B.R. 730, 736-37 (B.A.P. 9th Cir. 2006).

*Cepek* was primarily concerned with the question of whether an

attorney who represents a Chapter 11 debtor on retainer retains a

security interest in the retainer after conversion to Chapter 7,

an issue which may yet become relevant as the cases progress

through Chapter 7 but it not yet ripe for consideration.

    What is relevant to the applications before the court is the

fact that any fees and expenses awarded to Fox Rothschild and/or

Berger on an interim basis, either through the instant

applications or through prior awards, are administrative

expenses. 11 U.S.C. § 503(b)(2). And after conversion from

Chapter 11 to Chapter 7, any interim fee/expense awards are

subordinate in priority to any future Chapter 7 administrative

expenses, and that all pre-conversion Chapter 11 expenses will be

subject to pro rata distribution if the Chapter 7 estate cannot

pay them all in full. 11 U.S.C. § 726(b).

///

Thus, while the court is prepared to grant the Fee Applications on an interim basis (subject to the deductions and exclusions outlined above), the court will not order that any of the Three Debtors or their estates pay those fees and expenses until it is made clear after notice and a hearing that there are sufficient post-liquidation funds to pay the fees in full. If there are not sufficient funds to pay the attorney fees in full, then the fee/expense awards to Fox Rothschild and Berger will be paid on a pro rata basis pursuant to a future order of the court. The court may elect to revisit the issue of disgorgement at that time as required by law.

**III.**

**CONCLUSION**

Based on the foregoing analysis, it is the ruling of this court that Fox Rothschild and Berger shall be awarded fees and expenses on an interim basis as follows:

1.   The Fee Application of Fox Rothschild [Pinnacle Doc. 429; Pinnacle DCN KCO-06] is GRANTED as modified. Fox Rothschild shall be awarded attorneys' fees in the amount of **$134,518.50** and expense reimbursement in the amount of **$5,112.92** on an interim basis for a total interim award of **$139,631.42.**

2.   The Berger/Pinnacle Fee Application [Pinnacle Doc. #453; Pinnacle DCN MJB-16] is GRANTED as modified. Berger shall be awarded attorneys' fees in the amount **$50,032.00** and expense reimbursement in the amount of **$1,867.27** on an interim basis for a total interim award of **$51,899.27.**

///

3.    The Berger/Tyco Fee Application [Tyco Doc. #453; Tyco DCN MJB-13] is GRANTED as modified. Berger shall be awarded attorneys' fees in the amount of **$15,300.00** and expense reimbursement in the amount of $**682.25** on an interim basis for a total interim award of **$15,982.25.**

4.    The Berger/QSR Fee Application [QSR Doc. #294; QSR DCN MJB-12] is GRANTED as modified. Berger shall be awarded attorneys' fees in the amount of **$10,730.50** and expense reimbursement in the amount of **$620.16** on an interim basis for a total interim award of **$11,350.66.**

5.    No payments shall be made on any of these interim awards until further order of the court.

6.    The court reserves judgment on the necessity of any professional to disgorge some or all of any awarded and paid fees.

Fox Rothschild and Berger to prepare orders consistent with this opinion.

**Dated:** Apr 04, 2025            **By the Court**

**René Lastreto II, Judge**
**United States Bankruptcy Court**

**APPENDIX A**

**FOX ROTHSCHILD FEE REDUCTIONS AND EXCLUSIONS**

**B185 Assumption/Rejection.**

Total Billed for B185 Tasks = $143,149.00

Total Reduction = $47,170.50

| Date | Name | Hours | Billed | Reduction |
|------|------|-------|--------|-----------|
| 10/14/24 | Owens | 0.7 | $626.50 | $626.50 |
| | Owens | 1.0 | $895.00 | $895.00 |
| | Tractenberg | 0.6 | $576.00 | $576.00 |
| | Tractenberg | 0.6 | $576.00 | $576.00 |
| 10/15/24 | Owens | 0.3 | $268.50 | $268.50 |
| | Tractenberg | 0.5 | $480.00 | $480.00 |
| | Tractenberg | 0.7 | $672.00 | $672.00 |
| 10/16/24 | Owens | 0.2 | $179.00 | $179.00 |
| | Tractenberg | 0.3 | $288.00 | $288.00 |
| 10/17/24 | Owens | 0.4 | $358.00 | $358.00 |
| | Trachtenberg | 0.4 | $384.00 | $384.00 |
| | Tractenberg | 0.6 | $576.00 | $576.00 |
| 10/18/24 | Owens | 0.2 | $179.00 | $179.00 |
| | Tractenberg | 1.6 | $1,536.00 | $1,536.00 |
| 10/20/24 | Tractenberg | 0.2 | $192.00 | $192.00 |
| 10/21/24 | Tractenberg | 1.8 | $1,728.00 | $1,728.00 |
| 10/22/24 | Owens | 0.8 | $716.00 | $716.00 |
| | Owens | 0.9 | $805.50 | $805.50 |
| | Tractenberg | 5.1 | $4,896.00 | $4,896.00 |
| 10/23/24 | Tractenberg | 2.7 | $2,592.00 | $2,592.00 |
| 10/24/24 | Owens | 2.4 | $2,148.00 | $2,148.00 |
| | Owens | 0.4 | $358.00 | $358.00 |
| | Owens | 0.9 | $805.50 | $805.50 |
| | Owens | 0.5 | $447.50 | $447.50 |
| | Tractenberg | 0.4 | $384.00 | $384.00 |
| | Tractenberg | 0.1 | $96.00 | $96.00 |
| | Tractenberg | 3.2 | $3,072.00 | $3,072.00 |
| 11/26/24 | Owens | 0.2 | $179.00 | $179.00 |
| 12/4/24 | Tractenberg | 0.7 | $672.00 | $672.00 |
| 12/5/24 | Goyal | 1.1 | $484.00 | $484.00 |
| | Goyal | 0.9 | $396.00 | $396.00 |
| | Goyal | 0.5 | $220.00 | $220.00 |
| | Owens | 0.3 | $268.50 | $268.50 |
| | Tractenberg | 0.9 | $864.00 | $864.00 |
| 12/6/24 | Goyal | 1.5 | $660.00 | $660.00 |
| | Goyal | 0.5 | $220.00 | $220.00 |
| | Tractenberg | 0.7 | $672.00 | $672.00 |
| 12/7/24 | Goyal | 1.2 | $528.00 | $528.00 |
| | Tractenberg | 0.7 | $672.00 | $672.00 |
| 12/8/24 | Tractenberg | 1.2 | $1,152.00 | $1,152.00 |
| 12/9/24 | Owens | 0.4 | $358.00 | $358.00 |
| | Tractenberg | 5.2 | $4,992.00 | $4,992.00 |

| Date | Name | Hours | Billed | Reduction |
|---|---|---|---|---|
| 12/10/24 | Owens | 0.6 | $537.00 | $537.00 |
| | Owens | 1.5 | $1,342.00 | $1,342.00 |
| | Tractenberg | 1.1 | $1,056.00 | $1,056.00 |
| 12/13/24 | Tractenberg | 0.4 | $384.00 | $384.00 |
| 12/16/24 | Tractenberg | 0.5 | $480.00 | $480.00 |
| | Tractenberg | 0.1 | $96.00 | $96.00 |
| 12/17/24 | Tractenberg | 0.7 | $672.00 | $672.00 |
| | Tractenberg | 0.6 | $576.00 | $576.00 |
| 12/19/24 | Owens | 0.2 | $179.00 | $179.00 |
| | Owens | 0.2 | $179.00 | $179.00 |
| | Owens | 0.4 | $358.00 | $358.00 |
| 12/20/24 | Tractenberg | 0.4 | $384.00 | $384.00 |
| | Tractenberg | 0.7 | $672.00 | $672.00 |
| 12/26/24 | Owens | 0.1 | $89.50 | $89.50 |
| 12/27/24 | Owens | 0.3 | $268.00 | $268.00 |
| | Owens | 0.1 | $89.50 | $89.50 |
| 12/30/24 | Owens | 0.7 | $626.00 | $626.00 |
| 12/31/24 | Owens | 0.2 | $179.00 | $179.00 |
| | Owens | 0.5 | $447.50 | $447.50 |
| | Tractenberg | 0.4 | $384.00 | $384.00 |
| **TOTAL REDUCTION** | | | | **$47,170.50** |

### **B190 Other Contested Matters**

Total Billed for B190 Tasks = $34,368.00

Total Reduction = $1,152.00

| Date | Name | Hours | Billed | Reduction |
|---|---|---|---|---|
| 12/29/24 | Tractenberg | 0.8 | $768.00 | $768.00 |
| 12/31/24 | Tractenberg | 0.4 | $384.00 | $384.00 |
| **TOTAL REDUCTION** | | | | **$1,152.00** |

### **B320 Plan and Disclosure Statement.**

Includes some matters pertaining to Motion to Reconsider

Total Billed for B320 Tasks = $7,634.50

Total Reduction = $1,248.00

| Date | Name | Hours | Billed | Reduction |
|---|---|---|---|---|
| 11/15/24 | Tractenberg | 0.1 | $96.00 | $96.00 |
| 12/17/24 | Tractenberg | 0.5 | $480.00 | $480.0 |
| 12/30/24 | Tractenberg | 0.7 | $672.00 | $672.00 |
| **TOTAL REDUCTION** | | | | **$1,248.00** |

**APPENDIX B**

**BERGER/PINNACLE FEE REDUCTIONS AND EXCLUSIONS**

**Business Operations**

Total Billed for Business Operations = $17,926.50

Total Reduction = $3,208.00

| Date | Name | Hours | Billed | Reduction |
|------|------|-------|--------|-----------|
| 10/11/24 | MJB | 0.70 | $451.50 | $451.50 |
| | MJB | 0.20 | $129.00 | $129.00 |
| 10/13/24 | MJB | 0.10 | $64.50 | $64.50 |
| 10/14/24 | SD | 0.10 | $64.50 | $64.50 |
| | MJB | 0.70 | $451.50 | $451.50 |
| 10/19/24 | MJB | 0.10 | $64.50 | $64.50 |
| 10/24/24 | MJB | 0.20 | $129.00 | $129.00 |
| | MJB | 0.20 | $129.00 | $129.00 |
| 12/20/24 | MJB | 0.60 | $387.00 | $387.00 |
| | MJB | 0.20 | $129.00 | $129.00 |
| | MJB | 0.60 | $387.00 | $387.00 |
| 12/27/24 | MJB | 0.40 | $258.00 | $258.00 |
| 12/30/24 | MJB | 0.20 | $129.00 | $129.00 |
| 1/10/25 | MJB | 0.30 | $193.50 | *$129.00* |
| 1/20/25 | MJB | 1.70 | $1,096.50 | *$129.00* |
| 1/20/25 | MJB | 0.10 | $64.50 | $64.50 |
| 1/21/25 | RP | 0.10 | $47.50 | $47.50 |
| 1/21/25 | MJB | 0.50 | $322.50 | *$64.50* |
| **TOTAL REDUCTION** | | | | **$3208.00** |

**Case Administration**

Total Billed for Case Administration = $5,921.00

Total Reduction = $64.50

| Date | Name | Hours | Billed | Reduction |
|------|------|-------|--------|-----------|
| 2/21/25 | MJB | 0.10 | $64.50 | $64.50 |
| **TOTAL REDUCTION** | | | | **$64.50** |

**Financing**

Total Billed for Financing = $4,529.50

Total Reduction = $64.50

| Date | Name | Hours | Billed | Reduction |
|------|------|-------|--------|-----------|
| 12/27/24 | MJB | 0.10 | $64.50 | $64.50 |
| **TOTAL REDUCTION** | | | | **$64.50** |

**<u>Litigation</u>**

Total Billed for Litigation = $2,413.50

Total Reduction = $1,870.50

| Date | Name | Hours | Billed | Reduction |
|---|---|---|---|---|
| 10/14/24 | MJB | 0.10 | $64.50 | $64.50 |
| 12/30/24 | MJB | 0.60 | $387.00 | $387.00 |
| 1/9/25 | MJB | 0.10 | $64.50 | $64.50 |
| 1/10/25 | MJB | 0.10 | $64.50 | $64.50 |
| 2/3/25 | MJB | 0.10 | $64.50 | $64.50 |
| 2/4/25 | MJB | 0.10 | $64.50 | $64.50 |
| 2/7/25 | MJB | 0.10 | $64.50 | $64.50 |
|  | MJB | 0.10 | $64.50 | $64.50 |
|  | MJB | 1.00 | $645.00 | $645.00 |
| 2/17/25 | MJB | 0.30 | $193.50 | $193.50 |
| 2/18/25 | MJB | 0.10 | $64.50 | $64.50 |
| 2/19/25 | MJB | 0.10 | $64.50 | $64.50 |
|  | MJB | 0.10 | $64.50 | $64.50 |
| **TOTAL REDUCTION** |  |  |  | **$1,870.50** |

**<u>Plan and Disclosure Statement</u>**

Total Billed for Plan and Disclosure Statement = $15,985.00

Total Reduction = $2,188.00

| Date | Name | Hours | Billed | Reduction |
|---|---|---|---|---|
| 10/12/24 | MJB | 0.30 | $193.50 | $193.50 |
| 10/14/24 | MJB | 0.50 | $387.00 | $387.00 |
| 12/16/24 | MJB | 0.50 | $323.50 | *$129.00* |
| 2/5/25 | MJB | 0.10 | $64.50 | $64.50 |
| 2/6/24 | MJB | 0.50 | $322.50 | $322.50 |
|  | MJB | 0.10 | $64.50 | $64.50 |
|  | MJB | 0.10 | $64.50 | $64.50 |
|  | MJB | 0.10 | $64.50 | $64.50 |
|  | MJB | 0.40 | $258.00 | $258.00 |
| 2/7/24 | MJB | 0.20 | $129.00 | $129.00 |
| 2/10/24 | MJB | 0.30 | $193.50 | $193.50 |
| 2/17/24 | SD | 0.10 | $59.50 | $59.50 |
|  | MJB | 0.10 | $64.50 | $64.50 |
|  | MJB | 0.20 | $129.00 | $129.00 |
| 2/24 | MJB | 0.10 | $64.50 | $64.50 |
| **TOTAL REDUCTION** |  |  |  | **$2,188.00** |

**APPENDIX C**

**BERGER/TYCO FEE REDUCTIONS AND EXCLUSIONS**

**Business Operations**

Total Billed for Business Operations = $3,408.00

Total Reduction = $64.50

| Date | Name | Hours | Billed | Reduction |
|------|------|-------|--------|-----------|
| 10/24/24 | MJB | 0.10 | $64.50 | $64.50 |
| **TOTAL REDUCTION** | | | | **$64.50** |

**Plan and Disclosure Statement**

Total Billed for Plan and Disclosure Statement = $2,384.50

Total Reduction = $129.00

| Date | Name | Hours | Billed | Reduction |
|------|------|-------|--------|-----------|
| 2/8/25 | MJB | 0.10 | $64.50 | $64.50 |
| 2/21/25 | MJB | 0.10 | $64.50 | $64.50 |
| **TOTAL REDUCTION** | | | | **$129.00** |

**Instructions to Clerk of Court**
**Service List - Not Part of Order/Judgment**

The Clerk of Court is instructed to send the Order/Judgment
or other court generated document transmitted herewith to the
parties below.  The Clerk of Court will send the Order via the
BNC or, if checked ___, via the U.S. mail.

Pinnacle Foods of California LLC
Tyco Group, LLC
California QSR Management, Inc.
764 P. St., Ste. 105
Fresno, CA 93721

Walter R. Dahl
8757 Auburn Folsom Rd #2820
Granite Bay, CA 95746-2820

Office of the U.S. Trustee
United States Courthouse
2500 Tulare Street, Room 1401
Fresno, CA 93721

Michael Jay Berger
Law Office of Michael J. Berger
9454 Wilshire Blvd 6th Fl
Beverly Hills, CA 90212-2929

Hagop T. Bedoyan
McCormick Barstow
7647 N. Fresno Street
Fresno, CA 93720

Glenn Moses
Venable, LLP
801 Brickell Avenue, Suite 1500
Miami, FL 33131

Craig R. Tractenberg
Fox Rothschild LLP
2000 Market St 20 Floor
Philadelphia PA 19103